# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANEEN ACEY, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:18-cv-01395-PX |
| HMS HOST USA, INC., *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiffs Janeen Acey and Amber Hopkins brought this suit under the Fair Labor Standards Act ("FLSA") as a collective action on behalf of all similarly situated employees of Defendants HMS Host USA, Inc. and HMS Host Corporation. *See* ECF No. 96. Pending before the Court is Defendants' Motion to Dismiss. ECF No. 103. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court DENIES Defendants' motion.

### I. Background[1]

Defendants HMS Host USA, Inc. and HMS Host Corporation (collectively, "HMS Host" or "Defendants") "own and operate hundreds of various food and beverage franchises throughout the United States, primarily in large metropolitan airports." ECF No. 96 ¶ 9. HMS Host hired Plaintiffs Acey and Hopkins to prepare food and beverages at Defendants' Starbucks franchises in the Memphis International Airport. *Id.* ¶ 7.

Plaintiffs allege that HMS Host maintained "a centralized plan, policy and practice . . . of strictly enforcing restricted hours of compensable work per day and per week" even though such "budgeted labor" was inadequate to meet the demands of Defendants' franchises. *Id.* ¶ 14.

---

[1] For purposes of this Opinion, the Court accepts the facts pleaded in the Second Amended Complaint as true and construes them most favorably to Plaintiffs. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

Because of this policy, Plaintiffs and others similarly situated regularly performed unpaid "off the clock" work at the beginning and end of their scheduled shifts and "at the instruction or insistence of Defendants' management." *Id.* ¶¶ 14, 15, 22, 26. Plaintiffs assert they also performed "off the clock" duties on days they were not scheduled for work at all. *Id.* ¶ 26(c). Hopkins, for example, had to "to come in and perform job duties during her maternity leave" without compensation. *Id.* "Defendants also edited the time records of Named Plaintiffs and other hourly-paid food and beverage employees by deducting time for breaks that they did not take." *Id.* ¶ 22.

These policies and practices, Plaintiffs contend, caused them to be paid less than the minimum hourly wage and deprived them of overtime compensation for working over forty hours per week. *Id.* Acey, who was paid $11.50 per hour, "regularly worked" four to six hours per week over forty and was not properly compensated for such overtime work. *Id.* ¶ 23. Hopkins, who was paid $12.00 per hour, similarly alleges working four to six hours of overtime a week without full compensation. *Id.* ¶ 24.

Plaintiffs originally filed this suit as a nationwide collective action in the United States District Court for the Western District of Tennessee on August 24, 2017. *See* ECF No. 1. Although Named Plaintiffs Acey and Hopkins both reside in Tennessee, Defendants filed multiple motions to dismiss for lack of personal jurisdiction with respect to non-Tennessee opt-in plaintiffs to the putative collective action. *See* ECF Nos. 41, 54. Plaintiffs ultimately consented to transfer the case to the District of Maryland, where Defendants' corporate headquarters are located. ECF No. 77 at 1, 4.

This Court held an initial status conference on July 13, 2018. *See* ECF No. 86. Plaintiffs informed the Court that, as of the status, 114 opt-in plaintiffs had joined the action. ECF No. 99

at 7. Plaintiffs further explained that because the Plaintiffs could be categorized into specific subclasses based on job duties and responsibilities, the Complaint would likely be amended to reflect three subclasses. *Id.* at 8. Thus, the Court granted leave to amend and Plaintiffs filed a Second Amended Complaint on August 13, 2018. *See* ECF No. 96.

Rather than include the claims of all three classes in one case as previously discussed, the Second Amended Complaint narrowed the class description to include only "current and former hourly-paid non-exempt food and beverage [Quick Service Restaurant ("QSR")] employees" of HMS Host. ECF No. 96 ¶ 4. In October 2018, two other FLSA collective actions were filed, one for each of the remaining two subclasses. *See Flores v. HMS Host Corp.*, No. 18-03312-PX, ECF No. 1 ¶ 4 (D. Md. Oct. 26, 2018) (covering "hourly-paid non-exempt Warehouse Runner/Receiver/Utility employees"); *Storch v. HMS Host Corp.*, No. 18-03322-PX, ECF No. 1 ¶ 4 (D. Md. Oct. 26, 2018) (covering "hourly-paid tipped employees").

On September 18, 2018, Defendants moved to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim on which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 103. Defendants argue that the narrowed class claims "are too general to survive a motion to dismiss" and, further, that the time records of Named Plaintiffs Acey and Hopkins undermine their overtime allegations. ECF No. 104-1 at 8–14. Because Plaintiffs' Second Amended Complaint sufficiently pleads wage and overtime violations of the FLSA, the motion is denied.

## II. Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and

reasonable inferences most favorably to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

**III. Discussion**

"The FLSA is best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (citation omitted). The statute "is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages." *Monahan v. Cty. of Chesterfield, Va.*, 95 F.3d 1263, 1267 (4th Cir. 1996). Section 216(b) of the FLSA provides for an "opt-in" mechanism for collective actions under the statute "whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008) (citation omitted). Thus far, 116 current and former employees have opted in as party plaintiffs. *See* ECF No. 110 at 2.[2]

Defendants principally contend that the Second Amended Complaint allegations are "too general to survive" dismissal, as only Named Plaintiffs Acey and Hopkins "allege any facts at all in support of their claim." ECF No. 104-1 at 8. The remaining allegations are not specific to the opt-in plaintiffs, and thus are too speculative. Defendants also argue that the overtime claims fall short of the pleading standard under *Hall v. DIRECTV, LLC*, 846 F.3d 757 (4th Cir. 2017) *cert. denied*, 138 S. Ct. 635 (2018).

As to Defendants' first point, "[o]pt-in plaintiffs are considered party plaintiffs with the

---

[2] Two opt-in plaintiffs have withdrawn from the lawsuit since the Defendants' reply counted 118 opt-in plaintiffs. *See* ECF Nos. 111, 114.

same status as the named plaintiffs." *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 666 (D. Md. 2011). Unlike class actions filed pursuant to Federal Rule of Civil Procedure 23, "in a collective action under the FLSA, a named plaintiff represents only himself until a similarly-situated employee opts in as a 'party plaintiff' by giving 'his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 758 (4th Cir. 2011) (citation omitted). Even so, the Defendants' attempt to characterize the Plaintiffs' Second Amended Complaint as "shotgun pleading" is unavailing.

As a preliminary matter, it bears noting that Plaintiffs need not set out in great detail the specific factual context for each opt-in plaintiff. *See Spencer v. Macado's, Inc.*, No. 18-00005, 2018 WL 3676990, at *2 (W.D. Va. Aug. 1, 2018) (finding the allegations in the complaint "concerning the putative class members of the collective action . . . not relevant" to the motion to dismiss). This is especially so where the Plaintiffs allege across-the-board violations of minimum wage and overtime requirements through company policy and practice. *See, e.g., Cornish v. Deli Mgmt., Inc.,* No. WMN-16-672, 2016 WL 5934077, at *5 (D. Md. Oct. 12, 2016) (denying motion to dismiss collective action claims where the named plaintiff alleged minimum wage violations resulting from the company-wide reimbursement policy). Accepting as true and most favorably to Plaintiffs that they were subject to a "centralized plan, policy and practice" of working "off the clock" (*id.* ¶ 15), the Court may plausibly infer that this uniform scheme has produced similar, and actionable, FLSA violations as to all class members.

Defendants assert, relatedly, that the overtime claims do not meet the pleading standard announced in *Hall v. DIRECTV, LLC*. ECF No. 104-1 at 10–13. In *Hall*, the United States Court of Appeals for the Fourth Circuit held that a plausible overtime claim requires "sufficient

factual allegations to support a reasonable inference that [the plaintiff] worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours." 846 F.3d at 777. The Fourth Circuit clarified, however, that plaintiffs are not required to identify a particular week in which they worked overtime without compensation. Rather, the articulated standard is designed to emphasize that plaintiffs must "provide some factual context that will nudge their claim from conceivable to plausible." *Id.* (internal marks and citation omitted).

The Second Amended Complaint meets this standard. Defendants' policy of requiring QSR employees to work off the clock, in combination with routinized time-shaving from employees' records, provides sufficient factual detail to aver plausibly a systemic denial of overtime pay. The Named Plaintiffs, Acey and Hopkins, also submit that they routinely worked four to six hours of overtime a week without proper compensation. The Court, once again, may plausibly infer from the practices and policies as pleaded, in combination with two exemplar Plaintiffs, that Defendants have violated the FLSA overtime provisions. *See, e.g., Ridenour v. B&H New & Used Auto Parts, Inc.*, No. ELH-17-763, 2017 WL 6206045, at *4 (D. Md. Dec. 8, 2017) (finding plaintiff's overtime claims sufficient where he estimated his typical workweek and alleged "he was never paid overtime for the work he performed above" 40 hours); *Govan v. Whiting-Turner Contracting Co.*, 146 F. Supp. 3d 763, 768 (D.S.C. 2015) ("The court does not expect [plaintiff] or other potential class members to recall the specific dates on which they worked more than 40 hours per week.").

Perhaps recognizing the limited utility of *Hall* to this case, Defendants point the Court to *Ramnarine v. Rainbow Child Dev. Ctr., Inc.*, No. RWT 17-2261, 2018 WL 1243546 (D. Md. Mar. 9, 2018). *Ramnarine* does not upset this analysis. There, the plaintiff preschool teacher

6

brought a collective action under the FLSA to recover overtime wages. *Id.* at *1. Putting to the side that the *Ramnarine* plaintiffs sought amendment at the close of discovery (not at the beginning of the case) to expand (not narrow) the proposed classes, the proposed amended complaint in *Ramnarine* lacked any factual basis to support the claims. *Id.* at *2–3. That is not the case here. The Second Amended Complaint confines the claim to QSR employees subjected to Defendants' off the clock and time-shaving practices, which resulted in systemic FLSA violations. These facts, combined with particular examples of such violations as to the Named Plaintiffs, provide a sufficient factual basis to proceed on these claims.

Defendants next argue that, even if the Second Amended Complaint survives dismissal under *Hall*, the Named Plaintiffs' time records "underscore the implausibility" of their allegations. ECF No. 104-1 at 14. Defendants ask the Court to consider defense-selected timekeeping and payroll records of Acey and Hopkins. *See* ECF No. 103-4. Defendants suggest that such records are "incorporated by reference" into the Second Amended Complaint and so may be considered at the motion to dismiss stage. ECF No. 104-1 at 13. The Court declines Defendants' invitation.

Ordinarily, the Court may not consider extrinsic evidence when deciding the sufficiency of a complaint. *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment."). However, the Court may look to such documents if "integral to and explicitly relied on in the complaint" *and* the plaintiff does not challenge the documents' authenticity. *Id.* at 606–07 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). A document is "integral" if its "very existence, and *not the mere information it contains*, gives rise to the legal rights asserted."

7

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted).

Plaintiffs "vigorously contest" the documents' authenticity. ECF No. 108 at 9. In fact, they maintain they have never seen these records. *Id.* at 8. It would be a perverse result indeed to entertain dismissal based on Defendants' handpicked records where the Plaintiffs' claims rest on Defendants' systematically altering the same. The Court will not consider these records at this stage.

Alternatively, even if the Court considers these records, when viewed most favorably to Plaintiffs, all the records demonstrate is that Defendants paid Plaintiffs Acey and Hopkins for some overtime work. This fact does not defeat the larger claim that Plaintiffs regularly worked overtime for which they were not compensated. ECF No. 96 ¶¶ 23, 24. The gravamen of the Second Amended Complaint is that, based on compelled *off the clock* work, Plaintiffs did not receive all the overtime compensation due to them. The very nature of the violation, therefore, would not be captured in timesheets because it involves work for which Defendants were not keeping time. These records, in short, do not compel dismissal.

Defendants lastly contend that dismissal, at least as to some opt-in plaintiffs, is warranted because those plaintiffs are not QSR employees. ECF No. 104-1 at 9. Plaintiffs concede this point and explain that because the Second Amended Complaint narrowed the scope of the relevant class of employees, some of the opt-in plaintiffs who had joined prior to amendment do not properly fit within the QSR class. ECF No. 108 at 4 n.7. Plaintiffs further informed the Court that they were "actively in the process of contacting and opting-out class members" not properly within the QSR class, and Plaintiffs have since filed two additional lawsuits against Defendants to cover the other two classes of employees. *Id.; see also Flores v. HMS Host Corp.*,

No. 18-03312-PX, ECF No. 1 (D. Md. Oct. 26, 2018); *Storch v. HMS Host Corp.*, No. 18-03322-PX, ECF No. 1 (D. Md. Oct. 26, 2018). That certain opt-in plaintiffs are likely to drop from this action may be considered at the conditional certification stage. *See Spencer,* 2018 WL 3676990, at *1 n.1 ("The certification process is not implicated by this motion [to dismiss], which only addresses the allegations of the named Plaintiffs."); *see also Govan*, 146 F. Supp. 3d at 770 (denying defendant's motion to dismiss a collective action claim where plaintiff alleged "that he and other similarly situated laborers regularly worked over 40 hours per week and were not compensated at a rate of [one and] one-half times their regular hourly wage").

### IV. Conclusion

Plaintiffs Acey and Hopkins, on behalf of themselves and others similarly situated, have sufficiently pleaded violations of the FLSA's minimum wage and overtime provisions. For the foregoing reasons, the Court DENIES Defendants' motion to dismiss.

  5/20/2019  
Date

  /S/  
Paula Xinis  
United States District Judge